J. OWEN LINDLEY AND CHARLES LINDLEY v. GEORGINA YEATMAN AND MILDRED MULFORD.

(Filed 20 April, 1955.)

**1. Pleadings § 15—**

A demurrer to a complaint for failure to state facts sufficient to constitute a cause of action admits only those facts which are properly pleaded, and the legal inferences and conclusions of the pleader therefrom should be disregarded.

**2. Same—**

A demurrer does not admit the legal effect of an instrument as asserted by the pleader when the instrument itself is incorporated in the pleading and the construction alleged is repugnant to the language of the instrument.

**3. Pleadings § 19c—**

Where a complaint stating a single cause of action contains two repugnant statements of fact, the repugnant allegations destroy and neutralize each other, and where the remaining averments are insufficient to state a cause of action, a demurrer thereto is properly sustained.

**4. Same: Pleadings § 22—**

Where the complaint contains a defective statement of a good cause of action, the action should not be dismissed upon demurrer until the time for obtaining leave to amend has expired, G.S. 1-131; but where there is a statement of a defective cause of action, final judgment dismissing the action should be entered.

**5. Partnership § 12—Complaint held insufficient to state cause of action for division of partnership profits.**

The complaint alleged a joint enterprise for the improvement of lands of one defendant, the plaintiffs to contribute their labor and oversee and direct the work. Plaintiffs attached to the complaint a written instrument signed by the parties designating plaintiffs as managers of the farm to serve at the will of the owner, fixing their compensation, without reference to profits and without any formula for division of the profits among the parties. *Held:* The two repugnant statements of fact neutralize and destroy each other, and the complaint fails to state a cause of action to recover against defendant owner for division of profits from the enterprise, past or prospective, and constitutes nothing more than a statement of a defective cause of action as to the defendant named as business or office manager.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Parker, J.,* at December Term, 1954, of CARTERET.

Civil action for breach of contract, heard below on demurrers to the complaint.

These in pertinent part are the allegations of the complaint:

"2. That on or about the 11th day of September 1951 the plaintiffs wished to locate for purchase certain organic soils or 'pocosins' peculiar to parts of the East Coast of North Carolina, having theretofore made investigations, study and experiments concerning the commercial possibility of growing grass thereupon for raising beef cattle; . . .

"3. That in the course of locating for purchase a tract or tracts of organic soils or 'pocosins,' plaintiffs learned that the defendant Yeatman was the owner of a large tract of such soil, located in Carteret County, being a portion of the area known as the 'Open Grounds' . . .

"4. That . . . plaintiffs went to Asheville, North Carolina and conferred with the defendant Yeatman concerning the sale and purchase from her or development of the . . . 'Open Grounds'; . . .

"5. That . . . defendant Yeatman inquired as to the cost of developing her acreage, whereupon plaintiffs informed her . . . they felt that at least one million dollars would be required for a soundly-backed venture, whereupon said defendant stated that if it did not cost any more than that, 'We will keep the land and develop it ourselves,' or words to that effect.

"6. That plaintiffs and defendants . . . undertook an extensive course and plan of development of said lands under the terms of a contract; that part of said contract is set out in the memorandum drafted and written by the defendant Yeatman, which is hereto appended, marked Exhibit A, and asked to be taken as a part of this complaint . . ., and part of which came into being by and through the verbal representations and acts of the parties hereto, by the terms of which contract it was agreed that the plaintiffs would devote their full time and attention to the development of said lands for the production of grasses; . . . that the defendant Yeatman under the contract between the parties hereto agreed to furnish all capital for the development of the 'Open Grounds' project and that the plaintiffs and defendants would jointly undertake the development of the aforesaid 'Open Grounds.'

"7. That it was mutually agreed . . . that the plaintiffs were not being hired to undertake the venture . . . but that it was being undertaken by the four individuals for their mutual profit and benefit; . . . that the defendant Yeatman, in the course of furnishing all capital required as agreed, would pay for the living and other expenses incurred by plaintiffs in the course of their furtherance of the joint project, . . .

"8. That in pursuance of such contract . . ., Charles Lindley moved on January 1, 1952, or thereabouts, to the 'Open Grounds' and commenced devoting his full time to the clearing, draining, leveling, and

seeding of the soils to be put into production, supervising and managing said project, putting in roads and bridges, . . . and, generally, going forward with the plans agreed upon; that said Charles Lindley also spent considerable time conferring with J. Owen Lindley who was at that time still in Law School; that from the outset J. Owen Lindley devoted more than one-half of his time to the . . . project, making trips to obtain required farm and construction machinery, consulting with national and foreign experts upon the development of this . . . peculiar type of soil, purchasing cattle, . . . and otherwise performing his agreed duties consistent with the contract between the parties, it having been agreed at the beginning that he might complete his legal schooling.

"9. . . .; that on or about the 20th day of May 1952, defendant Yeatman communicated with . . . plaintiff (J. Owen Lindley), stating that she had determined that she would go on and develop the project alone and that plaintiff, J. Owen Lindley, should not come to the project in June of that year or in September upon completion of school as had been originally contemplated.

"10. That the . . . plaintiff, J. Owen Lindley, thereafter contacted the defendant Yeatman, indicating his willingness to go forward with the development of said project, in September 1952; that he contacted the defendant Mulford, who was connected with said joint adventure, as set forth in 'Exhibit A,' in September 1952, and . . . she confirmed the defendant Yeatman's previous exclusion of plaintiffs from the . . . 'Open Grounds' project . . . that both plaintiffs contacted the defendant Yeatman in March 1953, indicating their willingness to go forward with said project, or, if she refused to permit this, demanded their just share of the profits derived and to be derived from said joint adventure, but said defendant Yeatman . . . refused to permit them to continue the performance of the contract, . . . and . . . has excluded these plaintiffs from any further participation in the venture.

"11. That the plaintiff, J. Owen Lindley, expended from his own funds an amount in excess of $750.00 for travel and other expenses, attributable exclusively to the execution of the development of the 'Open Grounds' project, of which he has been reimbursed the amount of $500.00; that plaintiff, Charles Lindley, has received approximately $300.00 per month from January 1952, until some time in the latter part of May 1952 for living expenses, travel and other expenses connected with the project . . .

"12. That at the time the parties . . . entered into the joint adventure . . ., the defendant Yeatman was the owner of approximately 42,000 acres of land in Carteret County, of which . . . 36,000 acres was 'pocosins' or organic soil, which . . . excluding such timber as may

have been upon it, had a fair market value of about one dollar per acre, . . .; that approximately 2,000 acres of this . . . soil has been improved in accordance with the plans developed by the plaintiffs and put into grass and now has, . . . a fair market value of $300.00 per acre; that . . . it has cost approximately $100.00 per acre to improve and put such soil into grass production; that surrounding lands of the same original value not thus improved have, by virtue of the improvement of this particular soil, been enhanced in value to a present fair market value of approximately $10.00 per acre, . . .; that . . . said lands . . . have been enhanced in value over and above the costs of improvement in the sum of $704,000, by and through the plans and ideas initiated by said plaintiffs and jointly put into effect by the parties hereto as alleged.

"13. . . . that it was agreed from the beginning of the project that the parties hereto should share mutually in the profits therefrom; that said defendants, by their acts and conduct, jointly and severally, have excluded plaintiffs from the further development of said project and the defendant Yeatman continued the said development on her own . . . and has unjustly enriched the said defendant Yeatman; . . .

"14. That plaintiffs are entitled, . . . to one-half of the profits derived or to be derived from the 'Open Grounds' project, and to damages resulting from their wrongful exclusion as aforesaid, or both.

"WHEREFORE, plaintiffs pray the court that they have and recover of the defendants, or either of them, the sum of $352,000.00, plaintiffs' share of the accrued profits of the . . . project as alleged, and a sum to be computed as to the value of future profits," and for costs and general relief.

The written agreement, referred to in Paragraph 6 of the complaint, is in form a letter written by the defendant Yeatman to the plaintiffs, approved by all the parties to this action, as signified by their signatures at the end of the document. The memorandum is as follows:

"EXHIBIT 'A'                                        February 13, 1952

"Mr. Charles F. Lindley
Mr. J. Owen Lindley

"Dear Charles and Owen:

"This letter is to outline a working agreement we have entered into for the purpose of developing the Open Grounds for agricultural use, and though we will undoubtedly have to amend our plans from time to time as the work proceeds, it should serve as a basis for our immediate plans and for future adjustments when necessary.

"As a preamble I will described what has been done at the Open Grounds since its acquisition and what led to my decision in the summer

of 1951 to start a large scale development of this land. (Then follows a six-paragraph narrative of Mrs. Yeatman's activities in connection with the development of these lands, consisting of about 42,000 acres, from 1936 until she left the premises and moved to Asheville in 1951. This narrative is omitted as not being pertinent to decision.)

"*Charles and Owen Lindley will act as General Managers of the Open Grounds Farm.* Though they have had only limited experience in either administration or business they have a knowledge of organic soils and farming methods, imagination, initiative, energy, and a high standard of ethics. It is hoped that (they) will prove to be good managers in carrying out a program which not only has attractive financial prospects for us all but is one in which we all have a profound belief and interest. *Should the owner decide that either Charles or Owen does not fit for the job of General Manager, the owner will try to work out a reorganization whereby both will continue as part of the enterprise in some other capacity for which they may prove better fitted by inclination and aptitude.* (Italics added.)

"*As Business Manager we will have Mildred W. Mulford who has taken part in the operation and kept the accounts of the Open Grounds since 1936.* Our plan is for the business affairs of the Open Grounds to be handled in Asheville, N. C. under her direction. All policies concerning the operation of the project are to be decided in conference with Charles and Owen Lindley, Mildred Mulford and myself. Charles and Owen Lindley at the Open Grounds shall have charge of the execution of these policies including laying out of work, the employment and direction of personnel, experimental work and the keeping of records and reports which shall be transmitted regularly to the Asheville office. (Italics added.)

"As the most convenient and efficient way to handle our finances, the following method is proposed:

"A checking account in the name of the Open Grounds Farm will be maintained at the First Citizens Bank & Trust Company in Beaufort, N. C., and can be drawn on by the Farm Managers for traveling, telephone calls, emergencies and miscellaneous minor expenses, including pay for day labor. Itemized accounts should be sent to the Asheville office monthly.

"Bills for feed, fuel, and oil, hardware, repairs and other items which can be charged, should be approved by the Farm Managers and sent to Asheville for payment. Salary checks also will be sent from the office.

"Orders for equipment, except hand tools or other items, and orders for supplies such as lime or fertilizer will be issued by the Asheville office on recommendation of the Farm Managers.

*"Beginning January 1, 1952 Charles Lindley is to receive as compensation $250.00 monthly.* He will provide his own board and lodging. For the time being he is welcome to use part of the house on South River, but it may prove more advantageous for him to live nearer Beaufort where room, board, and telephone service are available. He will have the use of the Gray Jeep Station Wagon and will be reimbursed for traveling expenses, telephone and other business expenses in connection with his work. *When Owen joins the project at Open Grounds he will receive the same compensation as Charles* and will also be reimbursed for all expenses in connection with the Open Grounds project incurred prior to his coming. (Italics added.)

"Our goal is the development of 20,000 to 25,000 acres of land in grasses and clovers for hay or pasturage of cattle, or in any other crops which appear promising. We hope to accomplish all this in ten years, and plan to prepare and plant a minimum of 1,000 acres in each of the three years 1952 to 1954.

*"If this venture turns out as we hope, it is my intent that Charles and Owen Lindley, and Mildred Mulford shall each have a stake in its success. For the protection of us all it is contemplated that by January 1, 1953 we will review our plans and decide whether or not we should continue on this same basis for another two years.* By January 1, 1955 we will again review our plans and decide if and how we should proceed with the project and in what capacity each of us should serve, and also whether the project should be continued under individual ownership or as a partnership or corporation. (Italics added.)

"This entire agreement is of course based on mutual confidence and trust and it is with the greatest hope for a success satisfactory and rewarding to us all that this proposal is submitted for your approval and cooperation.

Sincerely,<br>GEORGINA P. YEATMAN.

"Approved:

    C. F. LINDLEY
    JESSE O. LINDLEY, JR.
    MILDRED W. MULFORD
    GEORGINA P. YEATMAN."

The defendants demurred separately to the complaint for failure to state facts sufficient to constitute a cause of action. Both demurrers were sustained by the trial court, with direction that the action be dismissed as to the defendant Mulford, and that the plaintiffs be allowed to amend as to the defendant Yeatman.

From judgments entered in accordance with the foregoing rulings, the plaintiffs appeal.

*Lewis S. Pendleton, Jr., and Hughes & Hines for plaintiffs, appellants.*
*C. R. Wheatley, Jr., and J. F. Duncan for defendants, appellees.*

JOHNSON, J.   A demurrer to a complaint for failure to state facts sufficient to constitute a cause of action admits the truth of every material fact properly alleged.   *Gaines v. Long Mfg. Co.,* 234 N.C. 331, 67 S.E. 2d 355; *Bryant v. Ice Co.,* 233 N.C. 266, 63 S.E. 2d 547.   See also *Scott v. Veneer Co.,* 240 N.C. 73, 81 S.E. 2d 146.   However, it is to be noted that on demurrer only facts properly pleaded are to be considered, with legal inferences and conclusions of the pleader to be disregarded. *Shives v. Sample,* 238 N.C. 724, 79 S.E. 2d 193; *Bank v. Gahagan,* 210 N.C. 464, 187 S.E. 580; *Brick Co. v. Gentry,* 191 N.C. 636, 132 S.E. 800; *Bank v. Bank,* 183 N.C. 463, 112 S.E. 11.

Nor does a demurrer admit the alleged construction of an instrument when the instrument itself is incorporated in the pleading and the construction alleged is repugnant to the language of the instrument.   *U. S. v. Ames,* 99 U.S. 35, 25 L. Ed. 295; 41 Am. Jur., Pleading, section 243, p. 462.   See also Annotation: 97 Am. St. Rep. 833.

Moreover, where in stating a single cause of action the complaint alleges two repugnant statements of facts, the repugnant allegations destroy and neutralize each other, and where, with the repugnant allegations thus eliminated, the remaining averments are insufficient to state a cause of action, demurrer will lie.   *Jacksonville, etc. Co. v. Thompson,* 34 Fla. 346, 16 So. 282; *Wood v. Security Petroleum Co.* (Tex. Civ. App.), 282 S.W. 943; 41 Am. Jur., Pleading, section 47.   See also McIntosh, N. C. Practice and Procedure, section 353, p. 353; 41 Am. Jur., Pleading, section 221.

Where, on demurrer, there is a defective statement of a good cause of action, the complaint is subject to amendment and the cause should not be dismissed until the time for obtaining leave to amend has expired, G.S. 1-131; but where there is a statement of a defective cause of action, final judgment dismissing the action should be entered.   *Mills v. Richardson,* 240 N.C. 187, 81 S.E. 2d 409; *Redic v. Bank,* 241 N.C. 152, 84 S.E. 2d 542.

Conceding, without deciding, that the allegations of the complaint, when considered without reference to the written contract incorporated in the complaint, are sufficient to set forth a cause of action for breach of contract, even so, it is manifest that material phases of such allegations are repugnant to the plain language of the written instrument and that under the terms of the instrument the plaintiffs are not entitled in any aspect of the case to recover against the defendants, or either of them, for loss of profits, past or prospective, on the theory of breach of contract.   The plaintiffs in their allegations refer to the development

project as a joint adventure in which the parties were to share mutually in the profits; whereas the written contract specifies it is contemplated that the project shall be operated on an experimental basis for one year at least, with no reference being made to profits or to any formula for division of profits among the parties. Indeed, it is implicit in the recitals and stipulations of the written instrument that no profits were anticipated during the trial period. Moreover, the written instrument designates the plaintiffs as "managers of the Open Grounds Farm," to serve at will of the defendant Yeatman, and fixes their compensation. No part of the compensation so fixed is alleged to be in default or is sued for in this action.

Here, then, at most we have a situation wherein the complaint alleges two repugnant statements of facts, which neutralize and destroy each other, leaving insufficient allegations to state a cause of action. Therefore the demurrers were properly sustained. See *Scott v. Veneer Co., supra* (240 N.C. p. 77); *Sabine v. Gill, Commr. of Revenue,* 229 N.C. 599, top p. 603, 51 S.E. 2d 1, 3.

It is manifest that as against the defendant Mulford the averments of the complaint constitute nothing more than a statement of a defective cause of action. Hence as to her the action was properly dismissed. *Mills v. Richardson, supra.* And, clearly, no harm has come to the plaintiffs from the trial court's ruling that the complaint constitutes a defective statement of a good cause of action, rather than a statement of a defective cause of action, against the defendant Yeatman, thus entitling the plaintiffs to amend as to her.

The judgment below is
Affirmed.

BARNHILL, C. J., took no part in the consideration or decision of this case.