LAWRENCE H. HUNNICUTT v. SHELBY MUTUAL INSURANCE COM-
PANY, OF SHELBY, OHIO.

AND

PATRICIA ANN HUNNICUTT, BY HER NEXT FRIEND, LAWRENCE H.
HUNNICUTT v. SHELBY MUTUAL INSURANCE COMPANY, OF SHEL-
BY, OHIO.

(Filed 18 October, 1961.)

**1. Pleadings §§ 2, 19—**

Where the complaint contains statements in the alternative, one of
which would support the cause of action and the other negate it, the
conflicting allegations neutralize each other, but such defect would consti-
tute a defective statement of a good cause of action, and therefore if a
demurrer *ore tcnus* is sustained, plaintiffs would have legal right to
move for leave to amend. G.S. 1-131.

**2. Appeal and Error § 1—**

Where a new trial is awarded on one ground, the Supreme Court need
not decide whether a new trial should also be awarded on another ground.

**3. Judgments § 3;  Insurance § 65—**

Where the injured party obtains judgment against insured on the
ground of insured's negligent operation of the automobile in question,
without adjudication of insured's ownership of the vehicle, insurer is
not estopped by such judgment in a subsequent action against it by the
injured party from setting up the defense that insured was the owner of
the vehicle and that such vehicle was not the one described in the policy,
and therefore was not covered thereby.

**4. Insurance §§ 54, 56—**

In a suit by the injured party against insurer to recover the amount of
a judgment theretofore obtained against insured upon the ground that
the vehicle causing the injury, although not described in the policy, was
covered thereby under its provision extending liability to vehicles not
owned by the insured but used by him temporarily as a substitute for
the described vehicle when the described vehicle was withdrawn from use
because of a breakdown, the burden is upon plaintiff to prove that the
vehicle in question was not owned by insured and was used by him
temporarily for the reason and purpose set forth in the policy.

**5. Same — Peremptory instruction to answer issue involving reason for
insured's use of vehicle belonging to another, held prejudicial.**

The liability of insurer for the amount of a judgment obtained against
the insured by the injured third party was dependent upon whether the
vehicle in question, although not described in the policy, was not owned
by insured but was used by him temporarily as a substitute because of
breakdown of insured's vehicle. Plaintiff relied largely on testimony of in-
sured and his mother elicited on cross-examination, which testimony was
conflicting and given by interested witnesses. *Held:* It was prejudicial er-
ror for the court to instruct the jury that if they answered the issue of
insured's ownership of the vehicle in the negative and found the facts to

be as the other evidence tended to show, to answer the issue as to whether such vehicle was covered by the policy in the affirmative, the credibility of insured's testimony that he was operating the car involved in the collision because the car described in the policy had broken down, being for the determination of the jury.

**6. Trial § 31—**

A peremptory instruction to the jury to answer the issues as indicated if they found the facts as all of the evidence tends to show, is incomplete, the proper form being for the court to add that if the jury did not so find the facts, to answer the issue in the negative, since the court must leave it to the jury to determine the credibility of the evidence.

APPEAL by defendant from *Campbell, J.,* Regular February Term, 1961, of BUNCOMBE.

Two civil actions, consolidated for trial, to recover on an automobile liability insurance policy issued by defendant to John Robert Huskey.

The policy was in force on February 2, 1959, when *a 1947 Chevrolet,* operated by Huskey, collided with an automobile owned and operated by Lawrence H. Hunnicutt in which Patricia Ann Hunnicutt was a passenger. In prior actions, it was established that Huskey's negligence was the cause of the collision and of damages sustained by plaintiffs; and each plaintiff obtained a final judgment against Huskey. Executions issued thereon were returned unsatisfied and no part thereof has been paid. These actions are to recover from defendant the amount of Huskey's legal liability to plaintiffs as established by said judgments. A copy of the policy and of the judgment in the prior action was attached to each complaint.

The automobile specifically described in the policy issued by defendant to Huskey is *a 1953 Ford.* It was not involved in said collision.

Plaintiffs alleged the 1947 Chevrolet "was owned by either John Robert Huskey, his mother or some other member of his household." They alleged the policy covered Huskey's *temporary use* of the 1947 Chevrolet on the occasion of the collision.

Answering, defendant denied liability for Huskey's operation of the 1947 Chevrolet, alleging, *inter alia,* that the 1947 Chevrolet, at the time of the collision, was owned by Huskey.

Plaintiffs seek to recover under this policy provision: "IV . . . (a) . . . except where stated to the contrary, the word 'automobile' means: . . . (3) TEMPORARY SUBSTITUTE AUTOMOBILE—under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

In each case, the court submitted and the jury answered these issues:

"1. Was John Robert Huskey the owner of the Chevrolet automobile referred to in the Complaint, on the 2nd day of February, 1959? ANSWER: No.

"2. If so, did John Robert Huskey have outstanding a policy of insurance covering the operation of the Chevrolet automobile, as alleged in the Complaint? ANSWER: Yes."

In each case, judgment was entered in favor of plaintiff for the amount of the judgment such plaintiff had obtained in the prior action against Huskey, together with interest from the date of such prior judgment, and costs. The amounts were within the limits defined in the policy.

Defendant excepted and appealed.

*Fisher, Fowler & Sigmon and Willson & Riddle for plaintiffs, appellees.*

*Van Winkle, Walton, Buck & Wall, Herbert L. Hyde and Roy W. Davis, Jr., for defendant, appellant.*

BOBBITT, J.  Before evidence was offered, defendant demurred *ore tenus* to each complaint on the ground the facts alleged did not state a cause of action. Specifically, they pointed out plaintiffs' allegation that the 1947 Chevrolet, operated by Huskey on the occasion of the collision, "was owned by either John Robert Huskey, his mother or some other member of his household." Thereupon, this entry was made: "COURT: Let the record show I overruled the demurrer ore tenus at this time." Defendant excepted. No other entry with reference to defendant's said demurrers *ore tenus* appears in the record. Nor does it appear that plaintiffs amended their complaints or requested leave to do so.

In 41 Am. Jur., Pleading § 221, cited in *Lindley v. Yeatman,* 242 N.C. 145, 151, 87 S.E. 2d 5, and in *Lewis v. Lee,* 246 N.C. 68, 72, 97 S.E. 2d 469, it is stated: "Where, however, the complaint alleges in the alternative two statements of fact, one of which would be legally sufficient to constitute a cause of action and the other not, they neutralize each other, and demurrer will lie."

In *Lindley v. Yeatman, supra,* this Court, in opinion by *Johnson, J.,* said: "Moreover, where in stating a single cause of action the complaint alleges two repugnant statements of facts, the repugnant allegations destroy and neutralize each other, and where, with the repugnant allegations thus eliminated, the remaining averments are insufficient to state a cause of action, demurrer will lie." This excerpt is

quoted by *Winborne, C.J.,* in *Lewis v. Lee, supra.* See also McIntosh, N. C. Practice and Procedure, § 353; 71 C.J.S., Pleading §§ 41, 42 and 230(b).

If Huskey owned the 1947 Chevrolet at the time of the collision, the policy did not cover his legal liability. However, if the 1947 Chevrolet was then owned by his mother or some member of his household (other than his spouse, if any), the policy did cover Huskey's legal liability *provided* his 1953 Ford, specifically described in the policy, was "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction," *and* he was using the 1947 Chevrolet temporarily as a substitute therefor.

The allegations of the complaints do not affirmatively disclose a defective cause of action, that is, that plaintiffs have no cause of action against defendant. If the demurrers *ore tenus* had been sustained, plaintiffs would have had the legal right to move under G.S. 1-131 for leave to amend their complaints in such manner as to remedy the defect in their factual allegations. *Davis v. Rhodes,* 231 N.C. 71, 56 S.E. 2d 43; *Skipper v. Cheatham,* 249 N.C. 706, 711, 107 S.E. 2d 625; *Johnson v. Graye,* 251 N.C. 448, 111 S.E. 2d 595.

We deem it unnecessary to determine whether, under the circumstances here considered, the court's failure to sustain defendant's demurrers *ore tenus* is sufficient ground for the award of a new trial. Having reached the conclusion that defendant is entitled to a new trial on other grounds, attention is called to the fact that plaintiffs may move under G.S. 1-163 for leave to amend their complaints.

Defendant's assignment of error directed to the court's denial of its motions for judgments of involuntary nonsuit is without merit. *Jackson v. Casualty Co.,* 212 N.C. 546, 193 S.E. 703, cited by defendant, is readily distinguishable. Suffice to say, the judgments obtained by plaintiffs in their prior actions against Huskey disclose that no issue was submitted or determination made *as to the ownership* of the 1947 Chevrolet.

While plaintiffs' allegations as to the ownership of the 1947 Chevrolet were as stated above, plaintiffs offered evidence tending to show the 1947 Chevrolet, at the time of the collision, was owned by Mrs. Ellie Huskey, Huskey's mother. This evidence consists largely of the testimony of Huskey and of his mother. Their testimony, considered in the light most favorable to plaintiffs, tends to show the facts set out in the following numbered paragraphs:

1. On February 2, 1959, Huskey worked for Redwood Furniture Company. On that date, and prior thereto, he lived with his mother.

2. Huskey had owned a 1949 Ford. He bought it from his brother.

When he "couldn't finish paying for" it, he gave it to his mother and she "paid it off."

3. In the summer of 1958, Huskey bought the 1947 Chevrolet from a used car dealer for $100.00. His name was "put on the title," but he did not apply for "a new title." The tags of the former owner were left on the car.

4. A month or so after Huskey purchased the 1947 Chevrolet, he was arrested and fined for driving it without having procured liability insurance thereon. It was then taken to the Huskey home and parked. On that very day, Huskey and his mother traded cars.

5. In their trade, Huskey's mother received the 1947 Chevrolet. He gave her "the switch keys, and the title, and the bill of sale on it," but did not then "have the title transferred to her name." In exchange, he received the 1949 Ford he had previously owned and was to receive $50.00. In December, 1958, he traded the 1949 Ford "on this '53 Ford." He then applied for and obtained liability insurance on the '53 Ford. The policy is an assigned risk policy because Huskey was "under 25."

6. From the time he "was caught on the Square for driving it without insurance." Huskey did not again drive the 1947 Chevrolet until February 2, 1959, the day of the collision. Until then, his mother drove it "what little bit it was used."

There are contradictions and discrepancies in the testimony of Huskey as indicated by these excerpts from his testimony on cross-examination: "I am talking about the same automobile, the Chevrolet. I just did not have the money to buy liability insurance at that time so I parked my car. I liked the car and decided to keep it. Around the first of the year, I saw this '53 Ford I have described, and I decided I would like it in addition to my Chevrolet." Again: "I kept both the Ford and Chevrolet at my house sitting out in the yard. It is right that I was just about the only driver of the Chevrolet and also the Ford. Occasionally my mother might drive the Chevrolet, and occasionally she might drive the Ford, but I did most of the driving in the family. Actually, I kept the Chevrolet more or less to fiddle with. I put a new motor in it and put a lot of work in it. I used the Chevrolet around our farm a lot to haul groceries, feed, etc."

In plaintiffs' prior actions, Mrs. Ellie Huskey was named as a co-defendant. Answering, Mrs. Ellie Huskey denied she owned the 1947 Chevrolet at the time of said collision and Huskey asserted his ownership thereof; and, in the Lawrence H. Hunnicutt (prior) case, Huskey alleged a cross action for damages to *his* 1947 Chevrolet. The records of said prior actions disclose that the issues submitted and the judgments rendered did not involve Mrs. Ellie Huskey. There was evidence

that Huskey had testified in the trial of said prior actions, and had stated on other occasions, that he was the owner of the 1947 Chevrolet at the time of the collision.

Further discussion of the evidence relating to the ownership of the 1947 Chevrolet at the time of the collision is deemed unnecessary. Suffice to say, no document or memorandum relevant to the ownership of the 1947 Chevrolet was offered; and plaintiffs' cases depended largely upon the credibility of the testimony of Huskey and of his mother.

The credibility of their testimony was challenged by the evidence as to their pleadings in the prior actions, by evidence as to Huskey's testimony therein, by testimony as to Huskey's prior declarations, and by Huskey's testimony on cross-examination. Moreover, Huskey and his mother were interested witnesses. If verdicts and judgments were rendered in favor of plaintiffs herein, the payment thereof by defendant would extinguish Huskey's personal liability under the judgments rendered against him in said prior actions. Moreover, as long as the judgments against Huskey in the prior actions remain unpaid, Huskey's ability to obtain operating privileges is seriously impaired. G.S. 20-279.13 *et seq.* The interest of Mrs. Huskey is on account of her relationship to and interest in her son.

We forego discussion of assignments of error directed to the court's instruction relating to the first issue. Suffice to say, the court instructed the jury at length with reference thereto. After doing so, the court gave this, and only this, instruction with reference to the second issue:

"(If you answer the first question NO, the Court instructs you that you would then answer the second question YES, as a matter of law, provided you find the facts to be as all the rest of the evidence tends to show. If you find the facts to be as all the rest of the evidence shows, and you answer the first question NO, then you would answer the second question YES.) On the other hand, if you answer the first question YES, and likewise find the facts to be as all of the rest of the evidence tends to show, then you would answer the second question NO."

Defendant assigns as error, based on exception aptly noted, the two sentences enclosed by parentheses.

Defendant did not tender issues or except to the issues submitted by the court. Even so, analysis of the issues submitted discloses the following: The first issue reads: "1. Was John Robert Huskey the owner of the Chevrolet automobile referred to in the Complaint, on the 2nd day of February, 1959?" Under an issue so phrased, the court properly placed the burden of proof on plaintiffs to establish that Huskey was *not* the owner. Hence, the answer, "No," was in plain-

tiffs' favor. The second issue reads: "*If so,* did John Robert Huskey have outstanding a policy of insurance covering the operation of the Chevrolet automobile, as alleged in the Complaint?" (Our italics) The wording of the second issue was erroneous and confusing. The words, "If not," instead of the words, "If so," would have been appropriate. Indeed, an affirmative answer to the first issue would have defeated plaintiffs' right to recover; and if the jury answered the first issue, "Yes," it would not reach the second issue.

Apart from the foregoing, defendant contends the challenged portion of the peremptory instruction with reference to the second issue was error.

It is first noted that the first sentence in said challenged portion contains the clause, "provided you find the facts to be as all the rest of the evidence tends to show," while the second sentence contains the clause, "(i)f you find the facts to be as all the rest of the evidence shows." Defendant contends this instruction indicated the court accepted as credible the testimony of the witnesses offered by plaintiffs, that no factual determination was to be made by the jury in connection with the second issue and that the second issue was to be answered as a matter of law depending solely upon the jury's answer to the first issue.

Assuming Huskey was not the owner of the 1947 Chevrolet, the burden of proof was on plaintiffs to establish by the greater weight of the evidence that Huskey was using the 1947 Chevrolet temporarily "as a substitute for the described automobile (1953 Ford) when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." *Ransom v. Casualty Co.,* 250 N.C. 60, 108 S.E. 2d 22.

The portion of Huskey's testimony most favorable to plaintiffs tends to show Huskey was accustomed to drive the 1953 Ford to and from his place of work; that, when he started home from work on the night of February 1, 1959, "the front end started making a noise"; that upon checking the 1953 Ford that night he found the wheel bearings were bad; that he parked the 1953 Ford at his home until he had opportunity to make or have made the needed repairs; and that on February 2, 1959, he was driving the 1947 Chevrolet as a temporary substitute for the 1953 Ford. This testimony, if believed, was sufficient to bring the 1947 Chevrolet within the coverage of the policy. Even so, and apart from the evidence bearing upon Huskey's credibility, there was also in the evidence Huskey's testimony, elicited on cross-examination and quoted above, that he kept "both the Ford and Chevrolet" at his house and was "just about the only driver of the Chevrolet and also the Ford." From this evidence, the jury may have

found that Huskey was accustomed to drive the 1947 Chevrolet as well as the 1953 Ford; and, if so, the jury could have rejected entirely Huskey's testimony as to why he was driving the 1947 Chevrolet on February 2, 1959.

Whether plaintiffs had satisfied the jury from the evidence and by its greater weight that Huskey on February 2, 1959, was driving the 1947 Chevrolet temporarily "as a substitute for the described automobile (1953 Ford) when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction," was the only factual determination to be made by the jury in connection with the second issue. No instruction was given as to what facts the jury must find in order to answer the second issue, "Yes." Indeed, we find nothing in the charge to indicate the jury was instructed that plaintiffs were required to establish by the greater weight of the evidence the factual element involved in the second issue. The jury was instructed to answer the second issue, "Yes," provided they found the facts to be "as all the rest of the evidence tends to show." Surely, if the jury believed the evidence elicited from Huskey on cross-examination, quoted above, and the evidence as to prior conflicting statements made by plaintiffs' principal witnesses, the jury would not be required, as a matter of law, to answer the second issue, "Yes." Moreover, no instruction whatever was given as to how the jury should answer the second issue if it *did not* "find the facts to be as all the rest of the evidence tends to show."

". . . when a peremptory instruction is permissible, conditioned upon the jury finding the facts to be as all the testimony tends to show the court must leave it to the jury to determine the credibility of the testimony." *Shelby v. Lackey,* 236 N.C. 369, 72 S.E. 2d 757; *Reynolds v. Earley,* 241 N.C. 521, 526-527, 85 S.E. 2d 904. This rule applies with full vigor when, as here, the credibility of the testimony of the witnesses offered by the party having the burden of proof is seriously challenged. Clearly, the jury should have been instructed that, if they failed to find the facts to be as plaintiffs contended, it should answer the second issue, "No." The instruction given would seem to exclude this possibility. *Shelby v. Lackey, supra; Reynolds v. Earley, supra.*

Under the circumstances, and for the reasons stated, it is our opinion, and we so hold, that the challenged peremptory instruction was inadequate and erroneous, and that defendant is entitled to a new trial.

New trial.