DONALD R. WEBB ET AL *v.* STATE FARM MUTUAL INS. CO.

5-3999                                   407 S. W. 2d 740

Opinion delivered November 7, 1966

*Brockman & Brockman,* for appellants.

*Reinberger, Eilbott, Smith & Staten,* for appellee.

Osro Cobb, Justice. Appellants, Donald R. Webb and Delma L. Webb, brothers, were joint operators of a gasoline service station in Pine Bluff, and both resided with their parents.

Donald R. Webb owned a 1957 Chevrolet automobile which was insured for both liability and collision coverage by appellee. The policy contract provided the named insured with additional like coverage while driving an automobile not owned by him as a temporary substitute automobile as same was defined in the policy.

Delma L. Webb was the owner of an uninsured 1962 Volkswagen. In October, 1963, Donald R. Webb loaned Delma L. Webb his Chevrolet to drive to and from Memphis, Tennessee to attend a General Motors training school. While his car was on loan, Donald repaired his brother's disabled Volkswagen and used it for general everyday transportation.

On October 25, 1963, Donald R. Webb was driving the Volkswagen when he swerved to miss a child in the street and ran into a ditch, overturning the automobile and causing considerable damage. On the night of the accident, Donald R. Webb notified appellee's local insurance agent of the accident. On October 28, 1963, appellant Donald R. Webb signed a claims report and a non-waiver clause in the presence of appellee's agent.

Appellants contended below that the provisions of the insurance policy entitled them to recover the amount of the damage to the Volkswagen.

The trial judge, sitting as a jury, found that the Volkswagen as being operated at the time of the accident did not meet the policy requirements to be covered as a non-owned automobile, and that it did not come within the policy definition of a temporary substitute automobile. Judgment was entered in favor of appellee. From this adverse decision, appellants bring this appeal.

## POINT I
## AMBIGUITY OF THE POLICY SHOULD BE CONSTRUED IN FAVOR OF THE INSURED.

Appellants contend that the language of the policy relied upon as to coverage of the insured while driving an automobile not owned by him is not clear and concise, but is ambiguous and that the ambiguity should be construed and resolved in favor of the insured.

It is well settled that where language used in an insurance policy is ambiguous, it should be construed in favor of the insured. *Aetna Life Insurance Company* v. *Spencer,* 182 Ark. 496, 32 S. W. 2d 310 (1930).

It necessarily follows that the announced rule stated above is applicable where the ambiguity is found, in an exclusionary clause as to policy coverage. *State Farm Mutual Auto Insurance Company* v. *Baker,* 239 Ark. 298, 388 S. W. 2d 920 (1965).

It should also be noted that we have consistently followed the rule that contracts of insurance should receive reasonable constructions so as to effectuate the purposes for which they are made. *Milwaukee Insurance Company* v. *Wade,* 238 Ark. 565, 383 S. W. 2d 105 (1964).

We quote the provisions of the instant policy which relate to coverage of the insured while driving a non-owned automobile:

"Non-owned automobile—means an automobile or trailer not
"(i)  Owned by
"(ii)  registered in the name of, or
"(iii) furnished or available for the frequent or regular use of *the named insured, his spouse, or any relative of either residing in the same household, other than a temporary substitute automobile.*" (emphasis added)

The Supreme Court of Pennsylvania in the case of

*Carr* v. *Home Indemnity Company,* 404 Pa. 27, 170 A. 2d 588 (1961) had before it for review the question of alleged ambiguity in a policy of insurance virtually identical in verbiage with the policy now before us. We quote from that opinion:

> "Reading the policy as a whole we find that the term 'non-owned automobile' is clearly defined in the policy as not including an automobile driven by the insured but owned by a relative, and said term is not ambiguous. If we were to hold otherwise we would be rewriting the insurance policy for the parties and this we can not do. *Holliday* v. *St. Paul Mercury Indemnity Company,* 153 Pa. Super. 59 [33 A. 2d 449.]"

We also quote an interesting footnote from the Pennsylvania case:

> "Followed to its logical conclusion, this contention would claim coverage under one policy of all automobiles regularly used by the named insured and a family with four automobiles would require only one policy for which a one-automobile policy premium was paid, an absurd conclusion."

There is no dispute as to appellants being brothers and members of the same household; nor is there any dispute as to the fact that the insured appellant did not own the Volkswagen, same belonging to his brother. The policy clearly limited its coverage as to nonowned automobiles to those not owned by or registered in the name of another member of the same household, with the single exception of use as a temporary substitute vehicle, as defined in the policy.

We therefore find that the non-owned automobile provisions of the insurance policy are not ambiguous, and that there is no merit in appellants' contentions under their Point No. 1. See case authorities cited in 87 A. L. R. 2d 937.

## POINT II
## THE VOLKSWAGEN WAS A TEMPORARY SUBSTITUTE AUTOMOBILE.

Appellants contend that the Volkswagen was covered under the policy by reason of its use by the named insured as a temporary substitute vehicle. A temporary substitute automobile as contemplated and defined in the policy is one described as follows:

> "Temporary substitute automobile—means an automobile not owned by the insured or his spouse while temporarily used as a substitute for the described automobile *when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."* (emphasis added)

The quoted section of the policy provides a specifically limited coverage as to a non-owned temporary substitute automobile when the automobile described in the policy is withdrawn from normal use by the insured because of its breakdown, repair, servicing, loss or destruction. This language is clear and emphatic. If the insured Chevrolet had broken down, requiring repairs, the insured would have been covered while driving the Volkswagen as a temporary substitute automobile. In this case, however, it was not the insured Chevrolet that became disabled. Indeed the proof shows that the Chevrolet was used on the trip to Memphis because the Volkswagen was not in good operating condition.

Both appellants testified that the insured Chevrolet was in sufficient running order to be driven from Pine Bluff to Memphis and back at least two times while Donald R. Webb used the Volkswagen after making some repairs to it.

Donald R. Webb testified:

> "My car, the Chevrolet, was in Memphis and I was driving the Volkswagen because my brother was at-

tending school in Memphis and his automobile had broken down and he was using my car (the 1957 Chevrolet) to go back and forth to school. * * * He (Delma Webb) was driving my car because his wouldn't run, and the Chevrolet was running all right.''

The Chevrolet had not been withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. Therefore, the Volkswagen could not qualify as a temporary substitute automobile. *Savage* v. *Spicer,* 235 Ark. 946, 362 S. W. 2d 668 (1962), and *Ransom* v. *Fidelity Casualty Company of New York,* 250 N. C. 60, 108 S. E. 2d 22 (1959).

The trial court was correct in its finding that the Volkswagen did not qualify as a substitute automobile as defined in the policy, and therefore we find no merit in appellants' contentions under Point No. II.

## POINT III
### THE APPELLEE IS ESTOPPED TO DENY LIABILITY UNDER THE TERMS OF THE POLICY.

Appellants assert that through the actions of appellee's agent it is estopped to deny liability under the terms of the contract. Appellant, Donald R. Webb, contacted the agent of appellee on the night of the accident and reported the collision; at which time, the agent informed appellant that the Volkswagen might be covered by the policy. Three days later appellant signed a claims report and a non-waiver clause that authorized appellee to investigate the accident and yet not waive any of its rights to deny any claim arising out of the accident and the contract of insurance. Although appellant testified that he did not know the legal significance of the statement, we find from appellant's own testimony that he did understand the language used in the non-waiver clause.

In addition, Ark. Stat. Ann. § 66-3226 (Repl.

1966) protects the insurer during its investigatory work and processing of claims prior to permitting or denying a claim under the policy:

> "66-3226. Claims administration not waiver.— Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
>
> "(1) Acknowledgment of the receipt of notice of loss or claim under the policy.
>
> "(2) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or uncompleted.
>
> "(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim except that such investigating and negotiations may constitute a waiver of proof of loss requirements. [Acts 1959, No. 148 § 293, p. 418.]"

The trial court sitting as a jury found as a matter of fact that appellee had not waived its right to deny the claim under the insurance contract and, as stated in *Mid-South Insurance* v. *Dellinger,* 239 Ark. 169, 388 S. W. 2d 6 (1965):

> "The findings of a trial court sitting as a jury have the verity and binding effect of a jury verdict and are conclusive of issues of fact \* \* \* therefore, if there is any substantial evidence to support the finding upon which the judgment is based, we must affirm."

We find no evidence that appellant was misled or

damaged by any statement made by appellee. At no time before the true facts were known to appellee did it admit or deny coverage under the policy.

There was substantial evidence to support the lower court's finding as to the question of estoppel. We find no merit in appellants' Point No. III.

Having found no merit in any of appellants' contentions, we affirm the decision.

Affirmed.