SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY
v. FRANCIS NOGGLE, ET AL

5-4769                    437 S.W. 2d 215

Opinion Delivered February 3, 1969

[Rehearing denied March 10, 1969.]

*Cockrill, Laser, McGehee, Sharp & Boswell* for appellant.

*Lloyd Henry* for appellee.

J. FRED JONES, Justice.   This appeal is from a judgment of the White County Circuit Court awarding medical benefits and denying death benefits under a liability insurance policy issued by the appellant, Southern Farm Bureau Casualty Insurance Company, to Rosebud School District No. 35.   The case was submitted to the trial court upon stipulation of facts, and was tried before the judge sitting as a jury.   Southern Farm has appealed from that portion of the judgment awarding medical benefits, and the claimant for death benefits has cross-appealed from that portion of the judgment denying her claim.

The appellant has designated one point it relies on for reversal, as follows:

"An automobile used in lieu of an insured vehicle at a time when an insured vehicle is available for use is not a substitute automobile."

The cross-appellant has designated one point, as follows:

"The trial court erred in holding the policy did not cover the owner and driver of the substituted automobile, Forrest F. Noggle, as an insured."

The entire case concerns the interpretation of the coverage provisions of an insurance contract and the facts are not in dispute.

On July 1, 1964, Southern Farm issued its standard form automobile liability insurance policy to Rosebud School District No. 35, Rosebud, Arkansas, covering ten separately designated school busses belonging to the district. The contract was evidenced by printed form together with an additional endorsement or rider. The printed form portion of the contract was designed for individually owned vehicles with limited family, guest and authorized user coverage. The policy was made applicable to the school district by an attached "School Bus Endorsement," and the difficulty arises in the printed form provisions of the policy rather than the endorsement. The contract provided for the payment of limited medical and death benefits under certain conditions, the pertinent provisions of the policy being as follows:

## "MEDICAL PAYMENTS—COVERAGE C

To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosethetic devices, and necessary ambulance, hospital, professional nursing and funeral services to or for:

## DIVISION 1

(a) the named insured and, while residents of the same household, his spouse, and any relative of either, who sustains bodily injury, caused by accident, while in or upon, entering or alighting from, or through being struck by any automobile.

(b) in the event of death of the first individual named as insured by automobile accident, di-

rectly and independently of any other cause, while in or upon, entering or alighting from, or through being struck by any automobile, the sum of $5,000 less any payments otherwise made hereunder on account of injury.

## DIVISION 2

(a) any other person who sustains bodily injury, caused by accident while in or upon, entering or alighting from the automobile while being used by or with the permission of the named insured or spouse.

## VIII. TEMPORARY USE OF SUBSTITUTED AUTOMOBILES

While the described automobile is withdrawn from use, such insurance as is afforded by this policy applies to another automobile not owned by the named insured or spouse while temporarily used as the substitute for such automobile. This insuring agreement does not cover as an insured the owner of the substitute automobile or any employee of such owner."

The School Bus Endorsement provides, inter alia, as follows:.

## "1. PURPOSES OF USE ARE:

(1) Transportation for school children, students (except adult students), teachers, school officials, board members, nurses, and doctors to and from school, games and outings in connection with school activities.

(2) Occasional use for transporting special groups, such as 4-H Club, Future Farmers, Scouts, and Farm Bureau groups, parents or guardians of

school children, or organized groups, except when used as a public or livery conveyance.

(3) Family, personal, business and pleasure use."

The declarations attached to the policy with the School Bus Endorsement provide:

"C. MEDICAL PAYMENTS

1. a $2,000 each person

1. b $5,000

2. $2,000 each person."

On February 27, 1965, while the policy was in force, Forrest Noggle, a teacher, coach and employee of the Rosebud School District, was using his personally owned automobile for transporting Rosebud School basketball players to and from a basketball tournament which was an officially approved athletic event of the insured. Any one of the school buses designated in the insurance policy was available for the trip, but with the permission of the school officials and at district expense, Mr. Noggle used and drove his own vehicle in lieu of a school bus listed under the policy endorsement. Lanny Noggle and Darlene Noggle were both students of the Rosebud School and were participants in the basketball tournament. They were passengers in the Noggle automobile and were returning from the tournament when the Noggle vehicle was involved in a collision which injured Lanny and Darlene Noggle and took the life of Forrest Noggle.

The original suit forming the basis for this appeal, was brought against the appellant by Francis Noggle, as the surviving spouse of Forrest Noggle for death benefits, and as the mother and next friend of Lanny Noggle for medical benefits. L. H. Noggle joined in

the suit as father and next friend of Darlene Noggle for medical benefits.   The complaint alleged that the personally owned vehicle of Forrest Noggle was a substitute automobile within the coverage of the policy of insurance issued by the appellant to the Rosebud School District and that appellees were entitled to recover under the medical pay and death benefit provisions of the policy.    It is from this allegation that the difficulty arises.

The amounts sued for are within the policy limits and there seems to be no contention that if one of the insured's school buses had been involved, instead of the privately owned automobile, there would have been no question as to coverage.    The point relied upon by the appellant presents the specific question of whether the personally owned vehicle being driven by Forrest Noggle at the time of the accident, was a temporary substitute vehicle within the meaning of the insurance policy. The exact language of the policy provision, as related to this specific question, appears in paragraph VIII of the policy, restated here with emphasis for distinction, as follows:

> *"While the described automobile is withdrawn from use, such insurance as is afforded by this policy applies to another automobile not owned by the named insured* or spouse *while temporarily used as the substitute for such automobile.     This insuring agreement does not cover as an insured the owner of the substitute automobile* or any employee of such owner."

The above provision attaches no conditions at all as to *why* the insured vehicle must be withdrawn from use in order for the insurance to attach to a substituted vehicle.    It is also noted that while this provision makes such insurance as is afforded by the policy (which includes medical benefits) applicable to a substitute automobile, it clearly eliminates the death benefits as to the *owner* of the substitute automobile.

Our decision in *Webb* v. *State Farm Mut. Ins. Co.*, 241 Ark. 363, 407 S.W. 2d 740, is of no assistance to the cross-appellant in the case at bar because the coverage on the substitute automobile in the *Webb* case applied when the described automobile was withdrawn from normal use because of specifically enumerated reasons. That is not the situation in the case at bar. In the *Webb* case the policy provided:

"Temporary substitute automobile—means an automobile . . . temporarily used as a substitute for the described automobile *when withdrawn from normal use because of its breakdown, repair, serving, loss or destruction.*" (Emphasis supplied.)

And this court in commenting on the language of the policy in the *Webb* case, said:

"The quoted section of the policy provides a specifically limited coverage as to a non-owned temporary substitute automobile when the automobile described in the policy is withdrawn from normal use by the insured because of its breakdown, repair, servicing, loss or destruction. This language is clear and emphatic."

The language of the policy provision in the case at bar does not provide such a "specifically limited coverage," which is so "clear and emphatic." The language of the policy provision in the case before us simply provides that such substitution may be effective "while the described automobile is withdrawn from use." If the appellant insurance company had intended to limit the conditions under which the insured vehicles were to be withdrawn from use before the insurance coverage would attach to substituted vehicles, it would have been a simple matter to have included such limitations in the contract it prepared.

The substitution of the automobile for a bus in this case could well have been prompted by the fact that the

small number of passengers attending the basketball tournament could be transported more economically in the automobile than in a school bus. But for whatever reason the substitution may have been made, the provision providing for the withdrawal and substitution is unlimited by purpose otherwise defined.

In *Washington Fire & Marine Ins. Co.* v. *Ryburn,* 228 Ark. 930, 311 S.W. 2d 302, this court said:

> "It is a settled rule in this state (and appears to be the general rule elsewhere) that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer, who wrote the insurance contract, and any doubt as to the meaning of language used, should be resolved in favor of the insured."

See also *Webb* v. *State Farm Mut. Ins. Co., supra.*

As to the point designated on the cross-appeal, we are of the opinion that the clear language of the policy provision, as emphasized supra, so clearly eliminates the owner of the substitute automobile as an assured under the contract, we would accomplish nothing in the way of additional clarity by adding more words to this opinion.

We conclude that the trial court was correct in the interpretation placed on the provisions of the insurance contract and that the judgment should be affirmed both on appeal and cross-appeal.

Affirmed.

FOGLEMAN, J., disqualified and not participating.