ARTHUR W. WRIGHT, ADMINISTRATOR OF THE ESTATE OF BEATRICE WRIGHT, DECEASED, v. THE FIDELITY AND CASUALTY COMPANY OF NEW YORK

AND

ARTHUR W. WRIGHT, ADMINISTRATOR OF THE ESTATE OF BEATRICE WRIGHT, DECEASED, v. LIBERTY MUTUAL INSURANCE COMPANY.

(Filed 20 June, 1967.)

1. **Pleadings § 12—**

A demurrer admits for the purpose of testing the sufficiency of the complaint the truth of all factual averments well stated and all relevant inferences reasonably deducible therefrom, together with exhibits attached to the complaint and made a part thereof, but a demurrer does not admit inferences or conclusions of law.

2. **Same—**

A demurrer does not admit the construction placed upon an instrument by the pleader when the instrument itself is incorporated in the pleading and the pleader's construction is repugnant to the language of the instrument.

3. **Insurance § 3—**

Statutory provisions in effect at the time of the issuance of a policy become a part thereof, and policy provisions in conflict with the statute are void.

4. **Insurance § 47.1— Complaint held to state cause of action against insurer on uninsured motorist clause.**

The assigned risk policy in suit obligated insurer to pay all sums which insured or his wife, or their legal representative, should become legally entitled to recover as damages from the operator of an uninsured automobile, and provided that the amount of such damages should be determined by agreement between the insured, or the personal representative of insured, and insurer, or by arbitration, or in an action against insurer in which the insurer might require the insured to join the tort-feasor. *Held:* The policy provisions are free from ambiguity, and the personal represen-

tative of the spouse of the insured may maintain an action for wrongful death resulting from the negligence of an uninsured motorist without a prior determination of the legal liability of the alleged tort-feasor or whether or not he was in fact an uninsured motorist, and demurrer *ore tenus* should have been overruled.

**5. Statutes § 5—**

The transcript of a Session Law as certified by the Secretary of State is controlling over the statement of its contents as codified.

**6. Insurance § 47.1—**

The provisions of Chapter 640, Session Laws of 1961, as certified by the Secretary of State, includes "hit and run" motorists within the protection of the compulsory uninsured motorist clause, and is controlling over the 1965 replacement codification, which omitted the provision relating to "hit and run" motorists.

**7. Same—**

Since in many cases it is impossible to determine the identity of a "hit and run" driver, a provision in an uninsured motorist clause requiring institution of action by the insured against such driver as a condition precedent to an insurer's liability would in most cases defeat recovery against the insurer, and any such provision would be in conflict with the purport of the statute and void.

**8. Same—**

Provision of an uninsured motorist clause stipulating that, upon failure of insurer and insured, or insured's legal representative, to agree as to the right of recovery under the clause and if so the amount, the matter should be settled by arbitration, in effect, ousts the jurisdiction of the courts and conflicts with the beneficient purposes of the uninsured motorist statute, and is void.

**9. Same—**

Institution of action against the operator or owner of an uninsured vehicle is not a condition precedent to the right of the administrator of a passenger in an insured vehicle with which the uninsured vehicle collided to recover for such death under the uninsured motorist clause in the policy.

**10. Same; Pleadings § 15—**

Where it does not appear from the complaint that insured had rejected coverage under the uninsured motorist clause in the policy, G.S. 20-279.21 (b)(3), demurrer on the ground that insurer had a statement in its file rejecting such coverage by insured, which insurer would offer in evidence, cannot warrant the sustaining of a demurrer to the complaint, since matters *de hors* the pleading may not be considered in passing upon the demurrer.

APPEAL by plaintiff from *Johnston, J.,* 16 May 1966 Civil Session of GUILFORD — High Point Division. Docketed and argued as Case No. 683, Fall Term 1966, and docketed as Case No. 686, Spring Term 1967.

Two actions were instituted by plaintiff on the same day in the Superior Court of Guilford County against two separate insurance companies on the uninsured motorist clause of an automobile liability insurance policy issued by each of the two separate defendants. The two actions were consolidated in the Superior Court of Guilford County, and were heard upon a demurrer filed by each defendant to the complaint in the action against it.

Plaintiff appealed from a judgment in each case sustaining the defendant's demurrer to the complaint in each case.

*Schoch, Schoch and Schoch by Arch K. Schoch, Jr., for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Beverly C. Moore for defendant appellee, Fidelity & Casualty Company of New York.*

*Lovelace, Hardin & Bain by Edward R. Hardin for defendant appellee, Liberty Mutual Insurance Company.*

PARKER, C.J. This is a brief summary of the essential parts of plaintiff's complaint in the first action: About 2:30 p.m. on 4 July 1964, plaintiff's intestate was a passenger in an automobile being operated by Betty Jo Carter, her daughter-in-law. This automobile was owned by Charles Nathan Carter, husband of Betty Jo Carter, and at the time was being operated by Betty Jo Carter with the full knowledge and consent of her husband. She was not a resident of plaintiff's intestate's household. When Betty Jo Carter had brought this automobile to a complete halt at the Delaware Bridge tollgate on the New Jersey Turnpike in New Jersey, and after her automobile had been stopped for several seconds waiting for traffic to pass through the tollgate, it was struck violently from the rear by a 1961 Cadillac operated by Leroy Chapman and owned by Robert Fields. Both Chapman and Fields were "uninsured motorists" and the said Cadillac was an "uninsured automobile," all as defined in Section 11(c) of a policy of automobile liability insurance issued by defendant insurance company, Fidelity and Casualty Insurance Company of New York.

As a direct result of the automobile in which plaintiff's intestate was riding as a passenger being struck while it was standing still by the automobile driven by Chapman, plaintiff's intestate sustained severe personal injuries causing her to suffer greatly in body and mind and to incur substantial medical and hospital expenses until her death on 24 December 1965. The collision between the automobile driven by Chapman with the rear end of the stopped automobile in which plaintiff's intestate was a passenger was caused by the sole

proximate negligence of Chapman, which acts of negligence were alleged with particularity in the complaint.

On 8 November 1963 Fidelity issued to plaintiff a policy of automobile liability insurance, which policy was in full force and effect on 4 July 1964. Plaintiff's intestate was his wife, resided in his household, and was therefore insured under the uninsured motorist clause of defendant's policy. This policy provides for payment of all sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator of an uninsured automobile, said liability being limited to $5,000. Defendant has made no payment under its policy to plaintiff for her injuries occasioned by an uninsured motorist. Wherefore, plaintiff prays judgment against defendant for the sum of $5,000 and the costs of this action.

This is a summary of the complaint in the second action in this case, which is identical with the complaint in the first action with these exceptions: On 9 February 1964 Liberty Mutual Insurance Company issued a policy of automobile liability insurance to Charles Nathan Carter, which policy was in full force and effect on 4 July 1964, and covered the operation of the automobile owned by him which was involved in the said collision. At no time did Charles Nathan Carter reject, either orally or in writing, the "uninsured motorist coverage" under the said policy, and, therefore, pursuant to G.S. 20-279.21(b)(3), this policy included protection against uninsured motorists. This policy provides for payment of all sums which the insured or its legal representative shall be legally entitled to recover as damages from the operator of an uninsured automobile, said liability being limited to $5,000, none of which amount has been paid by defendant to plaintiff or his intestate. Wherefore, plaintiff prays judgment against the defendant in this action for the sum of $5,000 and the costs of the action.

A copy of the policy of automobile liability insurance issued by Fidelity to plaintiff is attached to the complaint in the first action and made a part thereof. A copy of the policy of automobile liability insurance issued by Liberty to Carter is attached to the complaint in the second action and made a part thereof.

Fidelity in the action against it demurred *ore tenus* to the complaint for that the complaint failed to state a cause of action against it. The judge entered a judgment sustaining the demurrer and dismissing the action.

Liberty demurred to the complaint in the action against it on these grounds: It appears upon the face of the complaint that there is a defect of parties defendant in this action, in that the sole negligence alleged in the complaint is the negligence of one Chapman,

who was operating an automobile owned by one Fields; that there has been no adjudication as to the liability of said parties for the injuries and damages complained of in the complaint, and further no finding that if said parties were liable that they were "uninsured," and further that it is patent upon the face of the complaint and the policy attached thereto that the said policy did not afford coverage for uninsured motorists. Judgment was entered sustaining the demurrer to the complaint in the second action, and dismissing the action.

A demurrer to a complaint admits, for the purpose of testing the sufficiency of the complaint, the truth of all factual averments well stated and all relevant inferences of fact reasonably deducible therefrom. A demurrer does not admit inferences, or conclusions of law. 3 Strong's N. C. Index, Pleadings, § 12.

Exhibits attached to the complaint and made a part thereof should be considered on a demurrer. *Coach Lines v. Brotherhood,* 254 N.C. 60, 118 S.E. 2d 37.

A demurrer does not admit the alleged construction of an instrument when the instrument itself is incorporated in the pleadings and the construction alleged is repugnant to the language of the instrument. *Lindley v. Yeatman,* 242 N.C. 145, 87 S.E. 2d 5.

G.S. 1-151 requires "in the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties."

"G.S. 20-279.21 (b) (3) was enacted as Chapter 640, Session Laws of 1961, entitled 'An Act to amend G.S. 20-279.21 defining motor vehicle liability insurance policy for financial responsibility purposes so as to include protection against *uninsured motorists.*' (Our italics.)" *Buck v. Guaranty Co.,* 265 N.C. 285, 144 S.E. 2d 34.

The Fidelity policy issued to plaintiff is an assigned risk policy. Attached to the policy is an endorsement "North Carolina Protection Against Uninsured Motorists Insurance." An insuring agreement in this endorsement reads:

"I.   Damages for Bodily Injury and Property Damage Caused by Uninsured Automobiles

To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of:

(a)   bodily injury, sickness or disease, including death

> resulting therefrom, hereinafter called 'bodily injury', sustained by the insured;
>
> \*        \*        \*
>
> caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.

For the purpose of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree and the insured so demands, by arbitration; but if the insured elects not to arbitrate, the liability of the company shall be determined only in an action against the company and no prior judgment against any person or organization alleged to be legally responsible for such damages shall be conclusive of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company. In any action against the company, the company may require the insured to join such person or organization as a party defendant."

It contains a definition as follows:

> "II.  Definitions
>
> (a) Insured.  With respect to the bodily injury coverage afforded under this endorsement, the unqualified word 'insured' means:
>
> > (1)  the named insured and, while residents of the same household, his spouse. . . ."

The first action here is on the uninsured motorists endorsement contained in the automobile liability insurance policy issued by Fidelity to plaintiff, and the decision here in the first action depends upon the provisions of that contract contained in the uninsured motorists endorsement.

"Where a statute is applicable to a policy of insurance, the provisions of the statute enter into and form a part of the policy to the same extent as if they were actually written in it. In case a provision of the policy conflicts with a provision of the statute favorable to the insured, the provision of the statute controls." *Howell v. Indemnity Co.*, 237 N.C. 227, 74 S.E. 2d 610.

The endorsement to Fidelity's policy providing protection against uninsured motorists states that Fidelity will pay all sums which he is legally entitled to recover as damages from the operator of an uninsured automobile because of bodily injury to his spouse, a resident of his household, resulting from an accident and arising out of the ownership, maintenance or use of such uninsured automobile. G.S. 20-279.21 provides in part:

> ". . . (A)n 'uninsured motor vehicle' shall be a motor vehicle as to which there is no bodily injury liability insurance and property damage liability insurance in at least the amounts specified in subsection (c) of G.S. 20-279.5, or there is such insurance but the insurance company writing the same denies coverage thereunder, or has become bankrupt, or there is no bond or deposit of money or securities as provided in G.S. 20-279.24 or G.S. 20-279.25 in lieu of such bodily injury and property damage liability insurance, or the owner of such motor vehicle has not qualified as a self-insurer under the provisions of G.S. 20-279.33. . . ."

The question of the validity of the basic contract here is essentially a judicial question. The briefs of the parties state in substance that the first question presented for decision is this: Does an action lie against an automobile liability insurer under an uninsured motorists endorsement prior to the determination of "legal liability" of the alleged tortfeasor, and whether or not he was, in fact, insured?

The institution of an action by plaintiff in the first action against the uninsured motorist is not a condition precedent to Fidelity's legal liability under the uninsured motorist coverage provided in its endorsement to its policy for this reason: "For the purpose of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree and the insured so demands, by arbitration; but if the insured elects not to arbitrate, the liability of the company shall be determined only in an action against the company. . . ." In this endorsement provision is made that "In any action against the company, the company *may require* the insured to join such person or organization as a party defendant." (Emphasis ours.)

This provision in the endorsement of Fidelity's policy is free from ambiguity, and it must be construed according to its terms. *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410.

*Williams v. Insurance Co.*, 269 N.C. 235, 152 S.E. 2d 102, is a civil action to recover under an uninsured motorists provision of a

policy. In that case there was in force a family automobile and comprehensive liability policy issued by defendant to plaintiff's spouse, which policy contained an "uninsured motorists insurance endorsement." Plaintiff and his spouse were residents of the same household. We have examined the automobile liability insurance policy attached to the complaint and made a part thereof in the office of the clerk of this Court, and it contains a provision in the very words of the provision in Fidelity's policy for the purpose of determining the legal amount plaintiff is entitled to recover, if any, by agreement, or, if they fail to agree and if the insured so demands, by arbitration, and if not, by the institution of an action against the insurer. The action in that case was brought directly against the insurer. The trial judge entered an order sustaining the demurrer to the complaint on the ground that the facts alleged did not state a cause of action. This Court reversed the judgment of the trial court. The question of whether or not plaintiff must institute an action against the uninsured motorist as a condition precedent to defendant's liability in that case was not raised in the briefs of counsel and was not referred to in the opinion. The clear inference of the opinion is that it was not a condition precedent to defendant's legal liability. In the opinion, Branch, J., speaking for the Court, said:

> "The insured, in order to be entitled to the benefits of the endorsement, must show (1) he is legally entitled to recover damages, (2) from the owner or operator of an uninsured automobile, (3) because of bodily injury, (4) caused by accident, and (5) arising out of the ownership, maintenance, or use of the uninsured automobile."

The provision in the endorsement gives the insured the option to demand arbitration. It is not necessary for us in this case to pass upon the validity of this arbitration clause. This is said in 29A Am. Jur., Insurance, § 1611:

> "In accordance with general principles applicable to all contracts, it is the rule that a provision in an insurance policy that all disputes arising under the policy shall be submitted to arbitrators, or a provision similar in substance and effect, is not binding. On the other hand, the view prevailing in nearly all jurisdictions is that a stipulation not ousting the jurisdiction of the courts, but leaving the general question of liability for a loss to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is valid."

"Uninsured motorists coverage" is designed to close the gaps inherent in motor vehicle financial responsibility and compulsory insurance legislation, and this insurance coverage is intended, within fixed limits, to provide financial recompense to innocent persons who receive injuries and the dependents of those who are killed, through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. North Carolina, in company with several other states, requires compulsory "uninsured motorists coverage." G.S. 20-279.21(b)(3). There appears to be a trend to make this coverage compulsory, and within the short period since 1957 legislation has been enacted in California, New Hampshire, New York, and in Virginia requiring its inclusion in automobile liability insurance policies. Anno. 79 A.L.R. 2d 1252. The same annotation on page 1254 (1961) states: "To date comparatively few cases involving uninsured motorists insurance have received the attention of the courts outside of New York and those cases have presented a variety of questions relating to different phases of such coverage. It is to be recognized that the process of judicial construction, interpretation, and enforcement of such insurance contracts is necessarily in an early stage of development, and the existing decisions are too few and too fragmentary to permit the statement of controlling rules or principles." The same statement is more or less accurate today.

Considering the complaint in the first action liberally with a view to substantial justice between the parties, it is our opinion, and we so hold, that it contains factual allegations well stated sufficient to state a cause of action, and the demurrer to it was improvidently allowed. The judgment sustaining the demurrer is overruled.

The second action is on the uninsured motorist protection provision in the automobile liability insurance policy issued by Liberty to Charles Nathan Carter. This is not an assigned risk policy. Liberty's policy contains this provision:

"PART IV—PROTECTION AGAINST UNINSURED MOTORISTS
Coverage U—Uninsured motorists (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and

if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

Chapter 640, Session Laws of North Carolina 1961, states in relevant part:

"Section 1. G.S. 20-279.21(b), as the same appears in the 1959 Cumulative Supplement to Volume 1C of the General Statutes, is hereby amended by:

\*          \*          \*

"(3)   Adding thereto a new subdivision to be designated as subdivision 3 and to read as follows:

Secretary of State."

" '3.   No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Subsection (c) of paragraph 20-279.5, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles *and hit-and-run motor vehicles* because of bodily injury, sickness or disease, including death, resulting therefrom . . .' " (Emphasis ours.)

Page 1704 of the Session Laws of North Carolina 1961 reads:

"STATE OF NORTH CAROLINA,
DEPARTMENT OF STATE,
RALEIGH, JUNE 26, 1961

"I, THAD EURE, Secretary of State of North Carolina hereby certify that the foregoing (manuscript) are true copies of the original acts and resolutions on file in this office.

/s/    Thad Eure

Chapter 640, Session Laws of North Carolina 1961, when it was codified in G.S. 20-279.21(b)(3), left out "hit-and-run motor vehicles." What is stated in Chapter 640, Session Laws of North Carolina 1961, is controlling over the statement of it as codified in the General Statutes.

In many cases it is impossible to determine the identity of a hit-and-run driver. To hold that the institution of an action by the insured against a hit-and-run driver, and to recover damages from him for his tort, is a condition precedent to the insurer's liability under uninsured motorist coverage, would in most such cases defeat insurer's liability against uninsured motorist coverage. Liberty's policy affording protection against uninsured motorist reads in part: ". . . (D)etermination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration." This provision, in effect, ousting the jurisdiction of the court to judicially determine liability and damages and providing for compulsory arbitration between the insurer and the company, if they do not agree, conflicts with the beneficent purposes of our uninsured motorist statute favorable to the insured, and the provision of the statute controls. *Howell v. Indemnity Co., supra*; 29A Am. Jur., Insurance, § 1611. ". . . (I)f there were ambiguity in the policy which requires interpretation as to whether the policy provisions impose liability, the provisions would be construed in favor of coverage and against the company." *Williams v. Insurance Co., supra.*

We hold that the institution of an action by plaintiff against Chapman and Fields, either or both, is not a condition precedent to Liberty's liability under the uninsured motorist coverage in Liberty's policy, if there was such coverage. *Hill v. Seaboard Fire & Marine Insurance Company*, 374 S.W. 2d 606, (Mo. App. 1963); *Wortman v. Safeco Insurance Company of America*, 227 F. Supp. 468; *Application of Travelers Indemnity Company*, 226 N.Y.S. 2d 16; Blashfield, Automobile Law and Practice, Vol. 7, § 274.12; Couch on Insurance 2d, Vol. 12, § 45:627. It follows there is no defect of parties in the second action.

It is alleged in the demurrer in the second action "that it is patent upon the face of the complaint and specifically Exhibit A thereof that the automobile liability policy referred to in the complaint did not afford coverage under Section 'U' for uninsured motorists."

The complaint in the second action alleges: "At no time did said Charles Nathan Carter reject, either orally or in writing, 'uninsured motorist coverage' under the above policy" of Liberty.

G.S. 20-279.21(b)(3) is concerned with "uninsured motorist coverage," and reads in part: "The coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage."

From an examination of Liberty's policy attached to the complaint in the second action, and made a part thereof, it does not plainly appear, and it is not patent, upon the face of the policy that said policy did not afford coverage for uninsured motorists. It is stated in defendant appellees' brief: "As a matter of fact, Liberty Mutual has in its file a statement rejecting this coverage and signed by the plaintiff appellant which Liberty is prepared to offer in evidence. . . ." This quotation from the brief is a matter *dehors* the pleadings and may not be considered in passing upon the demurrer. 3 Strong's N.C. Index, Pleadings, § 15.

Plaintiff, in order to be entitled to the benefits of a provision of Liberty's policy against uninsured motorists, must show, *inter alia*, that Liberty's policy provides uninsured motorist coverage.

Considering the complaint in the second action liberally with a view to substantial justice between the parties, it is our opinion, and we so hold, that it contains factual allegations well stated sufficient to state a cause of action, and the demurrer to it was improvidently allowed. The judgment sustaining the demurrer is overruled.