**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

**v.**

**William A. MATLOCK et vir, Appellees.**

**No. 7950.**

Court of Civil Appeals of Texas.

Texarkana.

Aug. 26, 1969.

Rehearing Denied Sept. 23, 1969.

Dale Edwards, Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

Harry Friedman, Harkness, Friedman & Kusin, Texarkana, for appellees.

DAVIS, Justice.

Plaintiffs-appellees, William A. Matlock, and wife, Ivory Matlock, sued Defendant-appellant, State Farm Mutual Automobile Insurance Company, under the "Uninsured Automobile Coverage", as provided in an "Automobile Collision and Public Liability" insurance policy, for damages to their car and for personal injuries that appellees received as the result of an accident they had on or about the 14th day of October, 1967. The other automobile that was involved did not carry any insurance.

The case was tried before the court without a jury. Judgment was entered for the appellees. The trial court filed his findings of fact and conclusions of law, which were not excepted to. Appellant has perfected its appeal and brings forward eight points of error, and has filed an excellent brief.

By points one, two and three, appellant says the trial court erred in entering judgment for the appellees because the evidence is incompetent, insufficient and there are no findings of fact that the accident involved an "Uninsured" automobile. Both appellees testified. The evidence shows that William A. Matlock was driving a 1960 model Chevrolet in a northerly direction on Plum Street. His wife was in the car with him. As appellees approached the intersection of 13th Street, they saw a car, that was going in a westerly direction, stop just inside the street intersection. William A. Matlock took his foot off the accelerator and slowed down. He decided the other driver was going to stay stopped, so he proceeded ahead. Then the other car pulled out near the center of the street and stopped again. By this time, Matlock was pretty close to the other car and Matlock thought he could veer to the left and go around him. Then, the other car started forward again and Matlock had to turn his car further to the left, to keep from

hitting the other car, and Matlock's car struck a tree.

As the result of the accident, the car was completely demolished and both appellees testified that they received severe injuries from which they suffered much severe pain. Matlock testified that the driver of the other car was a "one-legged" man. Appellees testified that Earl Oxford, local recording agent for appellant, told them shortly after the accident, that the other motorist was "uninsured" as far as automobile liability insurance was concerned. Oxford issued the policy of insurance in question to William A. Matlock which was offered in evidence without any objections, and collected the premiums therefor. We believe that Oxford was the local recording agent of the appellant. New York Fire Ins. Co. v. Reed, Tex.Civ.App. (1940), 138 S.W.2d 138, er. ref. A local recording agent is defined in Art. 21.14, Sec. 2, Insurance Code, V.A.T.S., as follows:

"Sec. 2 Definitions; Certain Orders, Societies or Associations Not Affected. —By the term 'Local Recording Agent' is meant a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company or insurance carrier, including fidelity and surety companies, to solicit business and to write, sign, execute, and deliver policies of insurance, and to bind companies on insurance risks, and who maintain an office and a record of such business and the transactions which are involved, who collect premiums on such business and otherwise perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public; or a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company or insurance carrier, including fidelity and surety companies, to solicit business, and to forward applications for insurance to the home office of the insurance companies and insurance carriers, where the insurance company's and insurance carrier's general plan of operation in this State provides for the appointment and compensation of agents for insurance and for the execution of policies of insurance by the home office of the insurance company or insurance carrier, or by a supervisory office of such insurance company or insurance carrier, and who maintain an office and a record of such business and the transactions which are involved, and who collect premiums on such business and otherwise qualify and perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public."

 The trial court did not err in permitting Matlock to testify that the other car was not covered by public liability insurance. Aguilera v. Reynolds Well Service, Tex.Civ.App. (1951), 234 S.W.2d 282, er. ref.; New Hampshire Fire Ins. Co. v. Plainsman Elevators, Inc., Tex.Civ.App. (1963), 371 S.W.2d 68, ref., n. r. e.; United States Fire Insurance Company v. Hutchinson, Tex.Civ.App. (1967), 421 S.W.2d 706, er. ref., n. r. e. The evidence is competent and sufficient to support the trial court's findings of fact and conclusions of law. No exceptions were filed to the findings of fact and conclusions of law, and we think the evidence is fully sufficient to prove that an "uninsured automobile" was the actual cause of the damages and injuries incurred. Points 1, 2 and 3 are overruled.

By points 4 and 5, appellant says the trial court erred in finding that the appellees had complied with any and all conditions precedent to a suit directed against the appellant and in overruling its plea in abatement. The statute on uninsured motorists in Texas is rather new. It became effective October 1, 1967. The entire article reads as follows:

"Art. 5.06–1. Uninsured Motorist Coverage Required; Insolvency Protection; Right of Rejection

"(1) No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under

authority of Section 35 of the Texas Motor Vehicle Safety-Responsibility Act), covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in the limits described in the Texas Motor Vehicle Safety-Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. The coverage required under this Article shall not be applicable where any insured named in the policy shall reject the coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

"(2) For the purpose of this coverage, the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured motorist coverage. The Board may also, in such forms, define 'uninsured motor vehicle' to exclude certain motor vehicles whose operators are in fact uninsured.

"(3) In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury, sickness or disease, or death for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer; provided, however, whenever an insurer shall make payment under a policy of insurance issued pursuant to this Act, which payment is occasioned by the insolvency of an insurer, the insured of said insolvent insurer shall be given credit in any judgment obtained against him, with respect to his legal liability for such damages, to the extent of such payment, but such paying insurer shall have the right to proceed directly against the insolvent insurer or its receiver, and in pursuance of such right such paying insurer shall possess any rights which the insured of the insolvent company might otherwise have had if the insured of the insolvent insurer had made the payment."

As we view the article, there is no requirement that the insured must first bring suit against an insolvent party and prove the amount of damages. We think the insured has a right under the article to proceed directly against the insurance company. A part of the policy of insurance that was offered in evidence reads as follows:

"INSURING AGREEMENT III—UNINSURED AUTOMOBILE COVERAGE

COVERAGE U—Damages for Bodily Injury Caused by Uninsured Automobiles. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether

the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

## "DEFINITIONS—INSURING AGREEMENT III

"The definitions of 'Automobile, Owned Automobile, Temporary Substitute Automobile, Bodily Injury and Occupying' under Insuring Agreements I and II apply to Insuring Agreement III.

*Insured*—The unqualified word 'insured' means

(1) the first person named in the declarations and while residents of his household, his spouse and the relatives of either;

(2) any other person while occupying an insured automobile; and

(3) any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (1) or (2) above."

■ Although it seems to be the law in the State of Georgia that the insured must proceed against the uninsured motorist first, and then proceed against the insurance company, this does not seem to be the status of the law at the present date in Arkansas, Oklahoma, North Carolina and New York. They hold that a direct action may be maintained against the insurer. Wortman v. Safeco Inc. Co. (D.C.1965), 227 F.Supp. 468; Hill v. Seaboard Fire & Marine Ins. Co. (Mo.1963), 374 S.W.2d 606; Boughton v. Farmers Ins. Exchange (Okl.1960), 354 P.2d 1085, 79 A.L.R.2d 1245; Wright v. Fidelity & Casualty Co. of New York (1967), 270 N.C. 577, 155 S.E.2d 100; Travelers Indemnity Co. v. Debose (N.Y.Sup.), 226 N.Y.S.2d 16. We hold that under Art. 5.06–1 of the Insurance Code and the provisions contained in the insurance policy that the appellees have a right to bring this suit against the appellant, directly. Points 4 and 5 are overruled.

By points 6, 7 and 8, appellant says the trial court erred in finding that the appellees were not contributorily negligent, that appellees had "uninsured automobile coverage" under a policy issued by appellant, and the total sum of the judgment is excessive. Appellant does not complain about the value of the automobile as testified to by William A. Matlock. The trial court found that "uninsured motorist" was guilty of negligence in several respects that was a proximate cause of the collision. That the appellants were in no way contributorily negligent and both appellees suffered substantial damages and injuries.

At the trial of the case, appellees offered in evidence a deposition that was taken from Dr. Charles Adna Smith. When counsel for appellees started to read the deposition into the evidence, the trial court inquired about how long it would take to read the deposition. After discussions, counsel for appellees made the following offer: "I'll introduce the whole thing and give it to the judge to read at his leisure". Counsel for appellant said: "Be fine with me, be perfectly all right with me". The doctor testified as to several injuries that were received by each party, and the medi-

cines he prescribed to relieve each appellee from their suffering. He testified that William A. Matlock had suffered a contusion and abrasion of the left knee and abrasion of the left arm and fracture of the medial end of the scaphoid bone in his left ankle, with considerable swelling of the left knee and ankle. Also, a contusion of the left chest and upper abdomen. He had to put the left foot in a plaster of Paris cast and, according to the doctor, the man suffered considerable pain and injuries. He testified that Ivory Matlock suffered abrasions to her knees and her forehead and a sprain of her lumbar muscles in her back. That the injury was in the lower portion of the lower part of the ribs and the pelvic bone in what is called the "lumbar region". He testified that both appellees suffered severe pains as a result of the accident. Appellant admits in its brief that it paid $419.00 medical expenses for the treatment of the appellees as a result of their injuries.

■ There is no point of error to the effect that the uninsured automobile did not come into contact with the automobile occupied by the appellees. The negligence of the driver of the uninsured automobile was the proximate cause of the damages and injuries suffered by the appellees.

There are no cases in point in Texas. We have found only one case where a hit-and-run automobile sideswiped another one and the insured automobile struck a tree. Basore v. Allstate Insurance Company (Mo.1963), 374 S.W.2d 626. We do not feel that the provisions of the insurance policy, as prescribed under the statutes, actually require a direct contact between the two automobiles. In a policy of insurance that is open to different constructions, the construction given will be most favorable to the insured. Points 6, 7 and 8 are overruled.

The judgment of the trial court is affirmed.