HAROLD W. LICHTENBERGER v. AMERICAN MOTORISTS INSURANCE COMPANY

— AND —

DOROTHY LICHTENBERGER v. AMERICAN MOTORISTS INSURANCE COMPANY

No. 7018SC3

(Filed 25 February 1970)

**1. Insurance § 69— uninsured motorist coverage — construction of statute**

The compulsory uninsured motorist statute, G.S. 20-279.21(b)(3), was enacted as remedial legislation and is to be liberally construed to effectuate its purpose.

**2. Insurance § 79— automobile liability insurance — statutory provisions**

The provisions of G.S. 20-279.21, setting forth the contents of automobile liability insurance policies, are written into every policy as a matter of law.

**3. Insurance § 69— uninsured motorist coverage — rejection by insured**

Compulsory uninsured motorist coverage as required by G.S. 20-279.21(b)(3) does not apply where the insured named in the policy rejects the coverage.

**4. Insurance § 69— uninsured motorist protection — extent of coverage — rejection — burden of proof**

The delivery or issuance of a motor vehicle liability policy carries with it as a matter of law the requisite uninsured motorist liability, unless it is shown that the statutory coverage is rendered inapplicable by a rejection; the burden of proving the defense of rejection shifts to the insurer.

**5. Trial § 27— nonsuit — party having burden of proof**

Judgment of nonsuit will not be granted in favor of the party upon whom rests the burden of proof.

**6. Trial § 27— nonsuit — plaintiff's evidence — affirmative defense**

Nonsuit is proper where plaintiff's own evidence establishes an affirmative defense as a matter of law.

**7. Insurance § 69— uninsured motorist protection — question of coverage — rejection by insured — nonsuit**

In plaintiff's action against his automobile liability insurer to recover compensation under the uninsured motorist provision of the policy, plaintiff's evidence that he requested his insurance agent to reduce his automobile liability coverage to the minimum because of financial difficulties and that he accepted the liability policy showing omission of uninsured motorist coverage, *held* insufficient to establish as a matter of law that plaintiff rejected the uninsured motorist coverage, and the insurer's motion for nonsuit was improperly denied.

APPEAL by plaintiffs from *Gambill, J.,* 19 May 1969 Civil Session, GUILFORD Superior Court.

These are civil actions instituted by plaintiffs to recover amounts allegedly due under a policy of automobile liability insurance issued by the defendant to the male plaintiff. The plaintiffs attempt to recover damages arising from a collision between an automobile owned and operated by the male plaintiff and a hit-and-run automobile which was subsequently discovered approximately one-half mile from the scene of the collision with its license plates removed.

The 1952 Plymouth which collided with plaintiffs was owned by one Dempsey Odom of Seagrove, North Carolina, and was insured under a policy of automobile liability insurance issued by Nationwide Mutual Insurance Company. Nationwide denied coverage under its policy on the ground that at the time of the collision the Ply-

mouth was being operated by someone who had stolen it from its owner.

The evidence tended to show that the collision occurred on 22 July 1967, that plaintiffs and their son suffered personal injuries, and that the driver's side of the male plaintiff's automobile was considerably damaged. Defendant admitted the issuance of an automobile liability insurance policy to the male plaintiff and that the policy was in effect on 22 July 1967, but denied that it was liable by reason of uninsured motorist coverage. Further facts and contentions sufficient for an understanding of this appeal are hereinafter set forth in the opinion.

At the close of plaintiffs' evidence, judgment as of involuntary nonsuit was entered, from which plaintiffs appealed.

*Smith, Moore, Smith, Schell & Hunter by Jack W. Floyd and Richard W. Ellis for plaintiff appellants.*

*Jordan, Wright, Nichols, Caffrey & Hill by Karl N. Hill, Jr., and Edward L. Murrelle for defendant appellee.*

BRITT, J.

The principal question presented by this appeal is: Did the trial court err in entering judgment of involuntary nonsuit? We think that it did.

Defendant contends that nonsuit was proper for the reason that plaintiffs' evidence discloses that the male plaintiff had rejected uninsured motorist protection and, therefore, did not have uninsured motorist coverage at the time of the collision in question.

In *Moore v. Insurance Co.*, 270 N.C. 532, 155 S.E. 2d 128, the court declared:

"Our uninsured motorist statute was enacted by the General Assembly [Chapter 640, Session Laws of 1961] as a result of public concern over the increasingly important problem arising from property damage, personal injury, and death inflicted by motorists who are uninsured and financially irresponsible. Its purpose was to provide, within fixed limits, some financial recompence to innocent persons who receive bodily injury or property damage, and to the dependents of those who lose their lives through the wrongful conduct of an uninsured motorist who cannot be made to respond in damages. * * *"

The pertinent provisions of Chapter 640, Session Laws of 1961, now codified as G.S. 20-279.21(b)(3), read as follows:

"No policy of bodily injury liability insurance, covering lia-
bility arising out of the ownership, maintenance, or use of any
motor vehicle, shall be delivered or issued for delivery in this
State with respect to any motor vehicle registered or principally
garaged in this State *unless coverage is provided therein or sup-
plemental thereto*, in limits for bodily injury or death set forth
in subsection (c) of § 20-279.5, * * * for the protection of
persons insured thereunder who are legally entitled to recover
damages from owners or operators of uninsured motor vehicles
and hit-and-run motor vehicles because of bodily injury, sick-
ness or disease, including death, resulting therefrom. Such pro-
visions shall include coverage for the protection of persons in-
sured thereunder who are legally entitled to recover damages
from owners or operators of uninsured motor vehicles because
of injury to or destruction of the property of such insured
* * *. *The coverage required under this section shall not be
applicable where any insured named in the policy shall reject
the coverage*." (Emphasis added.)

The quoted portions of the statute were in effect in 1966 and 1967.

**[1]** In *Hendricks v. Guaranty Co.*, 5 N.C. App. 181, 167 S.E. 2d
876, this Court followed *Moore, supra*, saying: "This statute was
enacted as remedial legislation and is to be liberally construed to
effectuate its purpose * * *."

**[2]** The North Carolina Supreme Court has frequently held that
the provisions of G.S. 20-279.21, setting forth the contents of auto-
mobile liability insurance policies, are written into every policy as a
matter of law. In *Howell v. Indemnity Co.*, 237 N.C. 227, 74 S.E.
2d 610, the court said: "Where a statute is applicable to a policy of
insurance, the provisions of the statute enter into and *form a part
of the policy* to the same extent *as if they were actually written in it*.
In case a provision of the policy conflicts with a provision of the
statute favorable to the insured, the provision of the statute con-
trols. As a consequence, an insurance company cannot avoid lia-
bility on a policy of insurance issued pursuant to a statute by omit-
ting from the policy provisions favorable to the insured, which are
required by the statute." (Emphasis added.)

"North Carolina, in company with several other states, requires
compulsory 'uninsured motorists coverage,'" the court pointed out
in *Wright v. Casualty Co. and Wright v. Insurance Co.*, 270 N.C.
577, 155 S.E. 2d 100, and in *Moore v. Insurance Co., supra*, com-
mented: "We consider that G.S. 20-279.21 (b) (3) provides for a

limited type of compulsory automobile liability coverage against uninsured motorists."

[3]    Uninsured motorist coverage as a compulsory insurance required by G.S. 20-279.21(b)(3) is limited by the following provision: "The coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage." Defendant contends that the plaintiffs did in fact reject such coverage.

[4-5]    The statute quoted from is to be considered in conjunction with the principle reiterated in *Howell*, that "the provisions of the statute enter into and form a part of the policy." The delivery or issuance of a motor vehicle liability policy such as the male plaintiff's carries with it as a matter of law the requisite uninsured motorist liability, unless it is shown that the statutory coverage is rendered inapplicable by a rejection. As is true with cancellation or termination, the burden of proving the defense of rejection shifts to the defendant. In *Gibson v. Insurance Co.*, 232 N.C. 712, 62 S.E. 2d 320, the court stated the general principle which governs us: "* * * [J]udgment of nonsuit will not be granted in favor of one on whom rests the burden of proof."

[6]    Nonsuit is proper, nevertheless, where plaintiffs' own evidence establishes an affirmative defense as a matter of law. Plaintiffs' evidence thus raises the following question for our consideration: Does the plaintiffs' evidence of the male plaintiff's transactions with the insurer's agent clearly establish rejection of uninsured motorist coverage?

[7]    The male plaintiff testified to the following: "* * * I mentioned earlier having a telephone conversation with Mr. Rankin [insurer's agent]. That was the early part of December, 1965. * * * American Motorists was my liability insurer in December, 1965." (Plaintiffs introduced into evidence the policy in effect at and prior to that time for two automobiles, including liability insurance, "50-100-5"; medical payments, $2000; collision, $35000 and $2600; other physical damage, and supplementary coverage LP78 A26 which includes uninsured motorist protection. The premium after dividend was $245.01.) "* * * I wanted to talk to Mr. Rankin * * * because the premium was too high. * * * I did request that my liability insurance be changed in some respects in December of 1965. * * * I requested that my coverage be reduced to the minimum at that time because I was having financial troubles or was pressed for money. *In that conversation there was no discussion concerning uninsured motorists coverage.* * * * In talking with Mr. Rankin, I

asked him to reduce by liability coverage. I also asked him to drop the medical payments because I was covered under group insurance but I kept the rest in order to have adequate protection. \* \* \* I know that he agreed to follow my wishes, yes. I know on liability for instance, he mentioned the fact that I traveled from time to time to Indiana where my folks live, and that under the liability that I should have fifteen and thirty thousand dollars coverage in order to cover me through the State of Virginia. That is all I recall about it. \* \* \*" (Emphasis added.)

Plaintiffs' evidence further tended to show: Following the conversation between the male plaintiff and agent Rankin, defendant's policy No. MK 083 179 was issued to the male plaintiff. The original policy was mailed by Rankin to Central Savings Bank, holder of lien on cars covered by the policy. On the policy and opposite the item "Uninsured Motorists Coverage" was written or typed "No cov." As a part of the policy "package" was "Part IV — PROTECTION AGAINST UNINSURED MOTORISTS." The policy stated that it was effective from 7 December 1965 to 7 December 1966. (The male plaintiff's testimony was conflicting as to whether he received a copy of the policy.) On or before 7 December 1966, defendant's agent issued and sent to the male plaintiff a Continuation Certificate for policy No. MK 083 179 purporting to extend policy coverage from 7 December 1966 to 7 December 1967. Attached to the Continuation Certificate was a Loss Payable Clause Endorsement and a Protection Against Uninsured Motorists Insurance endorsement. On the Continuation Certificate form is a column "J — Uninsured Motorists" and nothing was written in this column. No premium was charged or paid for uninsured motorist coverage under the policy issued in December 1965 or the Continuation Certificate issued in December 1966.

The possibility that rejection took place other than expressly raises an additional question: Does the evidence of the male plaintiff's accepting the policy with uninsured motorist coverage omitted clearly establish rejection of that coverage?

In *Distributing Corp. v. Indemnity Co.*, 224 N.C. 370, 30 S.E. 2d 377, the court stated:

> "It is the duty of the applicant to communicate acceptance or rejection of the policy. In Couch's Enc. of Insurance Law, Vol. 1, page 172, sec. 94, the author states that: 'There is apparently some conflict of authority as to the duty of an applicant for insurance to discover that the policy delivered to him does not conform to the proposal or agreement, and to notify the com-

pany of his rejection or acceptance of the policy as written. The weight of authority seemingly supports the rule that it is incumbent upon an applicant who receives a policy which does not conform, as to terms, to the agent's representations, to notify the company of his refusal to accept the policy. And to this end he must examine the policy within a reasonable time after it comes to hand, and promptly, upon discovering obvious departures from the agreement, rescind the transaction and give the company due notice thereof, since, if an applicant receives and retains, without objection, policies made and sent to him, it is regarded as an acceptance.' * * *"

A policy issued under G.S. 20-279.21 (b) (3), however, is substantially different from a "voluntary" policy. Where the provisions of the statute "enter into and form a part of the policy," *Howell, supra,* the coverage is provided although the insured has never requested that coverage. In *Howell,* the court stated: "In case a provision of the policy conflicts with a provision of the statute favorable to the insured, the provision of the statute controls." In the absence of rejection, G.S. 20-279.21 (b) (3) writes uninsured motorist coverage into every automobile liability insurance policy although the policy may not indicate the coverage on its face. If the insurer "cannot avoid liability on a policy of insurance issued pursuant to a statute by omitting from the policy provisions favorable to the insured," *Howell, supra,* then neither can the insured's acceptance of the policy alone operate as a rejection of the coverage written into it by statute.

In our opinion the instructions of the male plaintiff to agent Rankin in December 1965, including his request "that my coverage be reduced to the minimum * * * because I was having financial troubles or was pressed for money," raised an issue of fact for the jury to determine, namely, did the male plaintiff reject uninsured motorist coverage. The evidence did not establish as a matter of law that the male plaintiff rejected uninsured motorist coverage.

We have carefully considered the other reasons advanced by defendant as to why the nonsuit should be sustained but find them without merit. We have also considered the other points raised in both briefs but refrain from discussing them as they may not arise upon a retrial of these actions.

For the reasons stated, the judgment of the superior court is

Reversed.

BROCK and GRAHAM, JJ., concur.